**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| LAUREN MINNITI, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. |
| v. ) ) ) | **JURY TRIAL DEMANDED** |
| STRAX WELLNESS CENTER, LLC, a Florida limited liability company, ) ) ) ) | |
| Defendant. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Lauren Minniti ("Plaintiff") brings this Class Action Complaint against Defendant Strax Wellness Center, LLC ("Strax"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**I.   NATURE OF THE ACTION**

1.   Strax is a company that offers plastic surgery services. In an effort to market its products and services, Strax sent (or directed to be sent on its behalf) unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

---

[1] As of October 16, 2013, prior express ***written*** consent is required. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (amending 47 C.F.R. 64.1200(a)(2)).

2. Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Strax to send text messages to their wireless telephones.

3. By sending such unauthorized text messages, Strax caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4. In order to redress these injuries, Plaintiff seeks an injunction requiring Strax to cease all unsolicited text message activities, an award of statutory damages to the Class members under the TCPA, together with costs and reasonable attorneys' fees.

## II.     JURISDICTION AND VENUE

5. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Strax under the Florida Long-Arm Statute, Fla. Stat. § 48.193, because Strax conduct and carry on business in this State and owns or uses real property within this State. This Court also has personal jurisdiction over Strax because a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward this State. Strax, by sending mass text messages into this State soliciting business, have sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper in this District pursuant to: 28 U.S.C. § 1391(b)(1), because Strax is subject to the personal jurisdiction of this District; and § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this District.

### III.    PARTIES

*Plaintiff*

8. Plaintiff is an individual domiciled in Broward County, Florida.

*Defendant*

9. Strax is a limited liability company organized in and existing under the laws of the State of Florida with its principal place of business located 4300 N. University Drive, Suite E200, Fort Lauderdale, FL 33351.

10. Strax uses the fictitious name "Strax Rejuvenation."

### IV.    FACTUAL BACKGROUND

*Background on Unsolicited SMS Activity*

11. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

12. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

13. SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

14.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

15.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

16.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

17.     As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express **written** consent.

18.     On July 10, 2015, the Federal Communications Commission issued a Declaratory Ruling that further acknowledged the "costly" and "particularly intrusive" nature of unwanted text messages, stating that "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission."[4]

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited August 4, 2015).

[3] *Id.*

[4] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, CG Docket No. 02-278, ¶1 (FCC July 10, 2015).

-5-

*Strax's Unsolicited SMS Message Advertisements to Plaintiff*

19.     As part of Strax's advertising campaigns, Strax has sent and continues to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

20.     On May 13, 2015, Strax transmitted a text message to Plaintiff's wireless phone advertising its "Memorial Day Specials." (A true and correct copy of the text message is attached as Exhibit A.)

21.     On or around May 29, 2015, Strax transmitted another text message to Plaintiff's wireless phone advertising its "Summer Splash Specials." (*See* Exhibit A.)

22.     On or around June 15, 2015, Strax transmitted another text message to Plaintiff's wireless phone advertising a promotional discount. (*See* Exhibit A.)

23.     None of Strax's text messages inform recipients on how to opt-out of receiving future text messages, as required by the TCPA and corresponding regulation 47 C.F.R. § 64.1200(b)(3).

24.     The "from" field of such transmission was identified as "990-00," which is the short code Strax used to send text messages. (*Id.*)

25.     The text messages ask the recipient to click on Internet links or call (954) 281-4112. (*Id.*)

26.     The Internet links direct the recipient to the website www.straxrejuvenationreviews.com. (*See* Exhibit B.)

27.     Strax owns or operates that website.

28. Strax sent or transmitted, or had sent or transmitted on its behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

29. On information and belief, Strax sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

30. Plaintiff never consented to in writing, requested, or otherwise desired or permitted Strax to send or transmit text messages to her wireless phone.

### V.   CLASS ALLEGATIONS

31. Plaintiff brings this action, as set forth below, on behalf of herself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States who received a non-emergency, unsolicited text message to their wireless telephones from Strax Wellness Center, LLC through the use of an automatic dialing system, at any time within the four years prior to the filing of the instant Complaint (the "Class").

Excluded from the Class are Strax and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

32. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On

information and belief, there are thousands of consumers who have been damaged by Strax's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Strax's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

34.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Strax's conduct constitutes a violation of the TCPA;

   b. whether the equipment Strax's used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

   c. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

   d. whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Strax's conduct; and

   e. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

35.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

36.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to

prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

37. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Strax has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

38. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Strax, so it would be impracticable for Class members to individually seek redress for Strax's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of the Class)

39. Plaintiff incorporates by reference paragraphs 1-38 as if fully set forth herein.

40. Strax and/or its agents sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

41. Strax sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

42. Strax utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

43. By sending the unsolicited text messages to Plaintiff and the Class, Strax has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Strax's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

44. Should the Court determine that Strax's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lauren Minniti, individually and on behalf of the Class, requests that the Court enter an Order as follows:

   A. Certifying the Class as defined above, appointing Plaintiff Lauren Minniti as the representative of the Class, and appointing her counsel as Class Counsel;

B. Awarding of actual and statutory damages;

C. Requiring Strax to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D. Awarding of reasonable attorneys' fees and costs; and

E. Awarding such other and further relief that the Court deems reasonable and just.

Dated: August 5, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By: /s/ Scott D. Owens

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II*
*rmiller@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

Scott D. Owens
*scott@scottdowens.com*
Patrick C. Crotty
*patrick@scottdowens.com*
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954.337.0666

*\*pro hac vice* application forthcoming

**Counsel for Plaintiff
and the Proposed Putative Class**

4822-5745-4372, v. 1